1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER JOHNSON,

                    Plaintiff,

            v.

PHILLIP BOWERS, *et al.*,

                    Defendants.

Case No.  C04-5456RBL

REPORT AND
RECOMMENDATION

Noted for June 24, 2005

This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§
636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  This matter
comes before the court on defendants' motion for summary judgment. (Dkt. #43).  Having reviewed
defendants' motion and the remaining record, the undersigned submits the following report and
recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL BACKGROUND

This case involves a civil rights action under 42 U.S.C. § 1983 filed by plaintiff against defendants
Phillip Bowers, Seargant McCaarty, Seargant Sullivan, C/O ("Corrections Officer") Blumberg, K. Bruner,
C/O Raub, Eldon Vail, and Monica Distefano.  In his complaint, plaintiff alleges defendants retaliated

1  against and harassed him for having filed another federal civil action by destroying his legal and personal

2  property, by writing frivolous infractions against him, and by denying him his legal mail.  He also alleges

3  defendants improperly contacted members of his family following the death of his aunt, and failed to do

4  anything to help ease his suffering due to the death of his aunt.  He further alleges defendants conspired to

5  interfere with his magazine subscription.  Finally, plaintiff alleges defendants tampered with a petition he

6  sent to the governor of Washington, causing an imminent threat to his life.

7       Because plaintiff has not responded to defendants' motion for summary judgment, the court adopts

8  the facts as set forth by defendants in their motion and attached exhibits:

9        Plaintiff is an inmate who is incarcerated in the Washington State Department of
   Corrections (DOC) pursuant to a conviction of First Degree Assault. Exh. 2,
10       Declaration of Judy Lonborg, Att. A, Offender Based Tracking System, Legal Face
   Sheet, p. 1.  Plaintiff's claims relate to conduct that occurred between June 17, 2004,
11       and July 28, 2004.[1] Complaint, pp. 2-6.  During this timeframe, Plaintiff was housed in
   the Intensive Management Unit (IMU) of Stafford Creek Corrections Center (SCCC).
12       Exh. 2, Att. A, p. 2.
         Inmates whose continued presence in general inmate population is determined
13       to pose a threat to life, property, himself, others, or the security or orderly operation of
   the institution are placed in the IMU. Exh. 3, Declaration of Melvin Butler, ¶ 9.  IMU
14       inmates who pose the greatest threat are referred for placement on Intensive
   Management Status (IMS). Id.  Placement on IMS requires referral by the
15       Administrative Segregation Hearings Officer, approval by the Superintendent and final
   approval by the Deputy Secretary of DOC, or a designee. Id.  Plaintiff has been on IMS
16       since March of 2003. Exh. 5, Declaration of Kathryn Bruner, ¶ 15.
         The IMU is the most secure unit, and houses the most dangerous individuals,
17       within the Washington correctional system. Exh. 3, ¶ 13. Security is of prime
   importance in the IMU. Id.  The philosophy of an IMU is to provide a very secure and
18       disciplined residential center where behavior can be monitored, security can be
   maintained and inmates can demonstrate appropriate behavior. Id.
19       Offenders in the IMU are subject to stringent property restrictions because, if
   there is a minimal amount of property available to offenders, there is less risk of the
20       manufacturing of weapons or misuse of the property in their possession. Exh. 2, ¶ 14.
   Inmates in IMU tend to have a high incentive to smuggle contraband into the Unit.
21       Exh. 3, ¶ 29.  The best way to control contraband is to limit the amount of personal
   property allowed to enter the IMU. Id.
22       In addition to property restrictions, safety and security in the IMU is maintained
   through the disciplinary infraction process and cell searches. Exh. 3, ¶¶ 6, 26.  Cell
23       searches enable DOC to maintain the security of its facilities by enabling staff to identify
   and confiscate contraband. Exh. 3, ¶ 26.  Cell searches are of particular importance in
24       an IMU because the inmates in that unit have already shown an inability or
   disinclination to follow the rules, and have been determined to be the most dangerous
25       offenders in DOC. Id.
         As a result, cell searches in the IMU are performed more frequently than they

26

27
   [1]"During his deposition, Plaintiff indicated that his Complaint encompasses June 17, 2004, through August 17, 2004.
   Exh. 1, Att. A, 34:10-13; 35:22-25.  However, Plaintiff signed his complaint on July 28, 2004, and did not amend his Complaint
28  to include events that occurred after the date that it was signed." Defendants' Motion for Summary Judgment and Memorandum
   in Support Thereof ("Defendant's Motion."), p. 2, n. 2.

are when an inmate is housed in a general population unit. Exh. 3, ¶ 27.  The increased frequency is the result of the unique security concerns associated with the operation of a maximum security unit. Id.  Random cell contraband searches are done a minimum of every thirty days. Id.  Each time an offender is removed from his IMU cell, the offender and his cell are searched. Id.  Quarterly searches of all IMU inmate cells are also conducted. Id.

Confiscation of contraband is of particular importance in the IMU, because once contraband is smuggled into the IMU, offenders can give it to one another by "fishing." Exh. 3, ¶ 28.  Fishing occurs when an offender secures an item to the end of a string or elastic and feeds the string under the cell door towards the cell door of another offender. Id.  That offender does the same, catches the first offender's string and pulls it into his cell. Id.  While fishing is prohibited, offenders engage in this conduct. Id.

In Claim I, Plaintiff alleges that he received infractions and his cell was searched because he had filed a lawsuit. Complaint, p. 2.  The cell searches Plaintiff challenges occurred on June 17, 2004, and July 28, 2004.  Only three Defendants had some form of involvement in these cell searches.  Defendant McCarty was not involved with selecting Plaintiff's cell to be searched, nor did he actually search the cell. Exh. 4, Declaration of Douglas McCarty, ¶¶ 10, 12 and 14.  However, afterward he discussed, with Plaintiff, the contraband that was confiscated. Id.  At no time did Defendant McCarty believe that the searches were performed in retaliation for Plaintiff's exercise of his First Amendment rights. Id.  The only two Defendants who actually searched Plaintiff's cell were Defendants Blumberg and Raub. Exh. 6, Declaration of Alan Raub; Exh. 7, Declaration of Donald Blumberg.  These two Defendants searched Plaintiff's cell on June 28, 2004. Exh. 6, ¶ 5; Exh. 7, ¶ 5.  This was a quarterly search during which every cell in the IMU was searched. Id.  Although this search is the only search listed in Plaintiff's Complaint, during his deposition Plaintiff stated that this search was not retaliatory. Exh. 1, Att. A, 42:14-19.  Each of the cell searches was supported by the legitimate penological interest of maintaining prison security and did not occur for the purpose of retaliating against Plaintiff.

Plaintiff also challenges the disciplinary infractions that he received between June 17, 2004, and July 28, 2004. Exh. 1, Att. A, 35:22-25.  The infractions were based on Plaintiff's conduct and were not issued because he was involved in litigation. Exh. 4, ¶¶ 8, 11, 17, 18, 19; and Atts. A, E, F, G, and H.  The only Defendants who actually issued an infraction to Plaintiff were Defendants McCarty and Bowers. See Exh. 4, Atts. A, E, F, G, and H.  Defendants Bruner and Butler were only involved in reviewing infraction reports, and did not issue the infractions or order that they be issued.  No Defendants were involved in issuing or reviewing the July 12, 2004, infraction. Exh. 4, Att. F.

Plaintiff also contends that Defendants Bowers, Butler, Bruner, and McCarty interfered with his incoming and outgoing legal mail. Complaint p. 2; Exh. 1, Att. A, 95:11-23.  These Defendants are not responsible for the processing of incoming and outgoing legal mail. Exh. 3, ¶ 39; Exh. 4, ¶ 22; Exh. 5, ¶ 22; Exh. 8, Declaration of Philip Bowers, ¶ 12.  None of them interfered with Plaintiff's legal mail. Id.  Further, Plaintiff admits that he refused to sign for his incoming legal mail, which resulted in a delay in his receipt of that mail. Exh. 1, Att. A, 88:9-10.

Claim II is an assault claim based on Defendants' failure to allow Plaintiff to speak to his family after his Aunt's death. Complaint, pp. 3-5; Exh. 1, Att. A, 100:2-25.  This claim is brought against Defendants Bowers, Butler, McCarty, and Bruner. Exh. 1, Att. A, 101:2-5.

On July 1, 2004, Defendant Bowers received notice that Plaintiff's Aunt had passed away. Exh.8, ¶ 7.  Defendant Bowers spoke with a couple members of Plaintiff's family and tried to set up a phone call between Plaintiff and his family. Id.  These efforts took place over a number of days but were unsuccessful. Id.  Subsequently, Plaintiff asked Defendant Bowers to stop contacting his family members.  Plaintiff believed the Defendant Bowers was discussing inappropriate matters. Id.

Although Defendant Bowers did not believe that he had said anything inappropriate during his contact with Plaintiff's family members, Defendant Bowers honored Plaintiff's request and made no further attempts to arrange a telephone call. Id.

Defendants Butler, McCarty and Bruner were not involved in the telephone call arrangements and do not know whether a telephone call occurred; they did not try to prevent such a call. Exh. 5, ¶ 21; Exh. 3, ¶ 37; Exh. 4, ¶ 15.

Policy allows for, but does not require, that an inmate be afforded such a phone call. Exh. 8, ¶ 8. Plaintiff had access to a telephone from which he could make collect telephone calls. Id. That telephone was in the yard. Id. Plaintiff recognizes that he was able to telephone his family members, but complains that it cost money to make the phone call. Exh. 1, Att. A, 115:25; 116:1-7. Plaintiff was offered a variety of tools to assist in the grieving process: extra yard, which would also allow him additional access to a telephone; access to a chaplain; and access to a mental health counselor. Exh. 8, ¶¶ 9 and 10. Plaintiff rejected these tools, and requested a television. Exh. 5, ¶ 21. Plaintiff was not authorized under policy to have a television. Id. There are security concerns associated with possession of a television: it could be smashed to be used as a weapon or the cord could be used for strangulation. Id.

Claim III is based on federal criminal statutes, and alleges violations through interference with correspondence sent by Plaintiff. Complaint, pp. 1, 5-6. Pursuant to a standard procedure utilized by DOC and the Governor's Office, Defendants Vail and DiStefano responded to correspondence that had been routed to them although it was not originally addressed to them. Exh. 10, Declaration of Eldon Vail; Exh. 11, Declaration of Monica DiStefano.

Defendants' Motion, pp. 2-6.

DISCUSSION

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether summary judgment should be granted, the court must view the record in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. Id. The moving party must demonstrate the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257. Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of

was committed by a person acting under color of state law and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).

Plaintiff also must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint.  Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981).  A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978).  A theory of *respondeat superior* is not sufficient to state a section 1983 claim.  Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982).

Plaintiff sets forth three claims in his civil rights complaint, none of which the undersigned finds to be valid because he has failed to show how each named defendant caused or personally participated in causing a deprivation of his rights, privileges or immunities secured by federal law or the United States Constitution.  Each such claim will be dealt with separately below.

I.   Plaintiff's First Claim

In his first claim, plaintiff alleges Department of Corrections counselor, Shawn Belshaw (a non-party to this action) and defendants in another federal civil action plaintiff filed with this court, retaliated against and harassed him for filing that lawsuit, by destroying certain "criminal evidence" (consisting of "photos of bodily disfigurement"), destroying his legal and personal property, writing frivolous infractions against him, and denying him his legal mail. Complaint, p. 2.  Plaintiff further alleges that Mr. Belshaw and defendants from the other lawsuit were acting under the authority of defendants Bruner and McCarty. Id. As such, however, plaintiff's claim against defendants Bruner and McCarty is based solely on a theory of *respondeat superior*, which, as noted above, he may not do.

In any event, neither defendant searched plaintiff's cell or selected his cell for search (with respect to the searches of his cell conducted on June 17 and June 28, 2004), which seem to be the bases for the retaliation claim. Defendants' Motion, Exh. 4, ¶¶ 10, 12, 14; Exh. 5, ¶ 19.  Although defendant McCarty did handle some of plaintiff's property, there is no indication in the record that he disposed of any of that

property improperly. Id. at Exh. 4, ¶¶ 10, 12, 14.  Nor did defendant Bruner play any role in confiscating, or otherwise disposing of, plaintiff's property. Id. at Exh. 5, ¶ 19.

The only other named defendants plaintiff includes in Claim I, are defendants Blumberg and Raub, whom plaintiff alleges "committed destruction" on June 28, 2004. Complaint, p. 2.  While plaintiff does not explain what such "destruction" refers to, that is the day defendants Blumberg and Raub conducted a search of plaintiff's cell. Defendants' Motion, Exh. 6, ¶ 5; Exh. 7, ¶ 5.  The only items seized at that time were excess hygiene items. Id. at Exh. 7, ¶ 5.  Neither defendant appears to have participated in destroying any of plaintiff's property. Id. at Exh. 6, ¶ 5; Exh. 7, ¶ 5.

This search, furthermore, was a "quarterly" search, during which every cell in the IMU also was searched. Defendants' Motion, Exh. 3, ¶¶ 26-28; Exh. 6, ¶ 5; Exh. 7, ¶ 5.  Thus, the search conducted on June 28, 2004, sems to have been conducted for the legitimate penological purpose of maintaining prison security. Id. at Exh. 3, ¶¶ 26-28; Bell v. Wolfish, 441 U.S. 520, 557 (1979) (cell searches are appropriate measure for maintaining prison security); Hudson v. Palmer, 468 U.S. 517, 529 (1984) (random cell searches are essential to effective security of penal institution).  In addition, plaintiff himself has admitted this type of search is not retaliatory. Defendant's Motion, Exh. 1, Att. A, 42:14-19.

Plaintiff also has failed to state a valid retaliation claim.  To state a claim for retaliation, an inmate "must allege both that the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).  The inmate "must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

Federal courts "should be circumspect when asked to intervene in the operation of state prisons," and "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d 802, 806-07 (9th Cir. 1995) (quoting Sandin v. Connor, 115 S. Ct. 2293, 2299 (1995)).  Plaintiff bears the burden of proving the absence of any legitimate correctional goals. Id. at 806.

Here, defendant Raub did not have any knowledge of plaintiff having filed prior lawsuits, nor did he search plaintiff's cell in retaliation for filing such a lawsuit. Defendants' Motion, Exh. 6, ¶¶ 7-8.  In

REPORT AND RECOMMENDATION
Page - 6

1  addition, although defendant Blumberg was aware plaintiff was involved with other litigation, he did not

2  search plaintiff's cell in retaliation for this. Id. at Exh. 7, ¶¶ 6-7.  Defendant McCarty, furthermore, had no

3  knowledge of any litigation initiated by plaintiff until he was notified of this lawsuit, nor does anything in

4  the record indicate defendant Bruner knew of such litigation. Id. at Exh. 4, ¶ 21; Exh. 5, ¶ 23.

5  II.    Plaintiff's Second Claim

6          Plaintiff alleges a number wrongdoings by defendants in his second claim.  First, plaintiff alleges

7  defendant Bowers improperly contacted certain members of his family following the death of his aunt.

8  Complaint, p. 3-4; Defendants' Motion, Exh. 8, ¶ 7.  Such contact, however, was only an attempt to set up

9  a telephone call between plaintiff and his family members, and was not made for any improper purposes.

10  Defendants' Motion, Exh. 8, ¶ 7.  Department of Corrections policy, furthermore, does not require that

11  inmates be afforded such telephone calls. Id. at Exh.  8, ¶ 8.  Even so, plaintiff had access to a telephone

12  with which he could make collect telephone calls, and he was provided with extra yard time to do so. Id. at

13  Exh. ¶¶ 8, 10.  While plaintiff complained about the cost of making collect calls, he did recognize that he

14  had such access. Id. at Exh. 1, Att. A, 115:25; 116:1-7.

15          Plaintiff further alleges that on June 28, 2004, defendant Bowers, along with other correctional

16  officers, antagonized, harassed, and retaliated against him, by banging on his cell door, writing frivolous

17  infractions, destroying his legal and personal property, and tampering with his incoming and legal mail.

18  Complaint, p. 4.  As noted above, however, plaintiff admitted that the type of "quarterly" search of his cell

19  conducted on that date is not retaliatory.  In addition, there is no indication defendant Bowers improperly

20  banged on plaintiff's cell door, or participated in any searches of plaintiff's cell, which appear to be the

21  bases of plaintiff's claim against him. Defendants' Motion, Exh. 8, ¶ 6.

22          There also is no indication that these searches were conducted for an invalid purpose, or that any of

23  plaintiff's property was improperly removed or destroyed. Id. at Exh. 4, ¶¶ 12, 14, 23; Exh. 6, ¶¶ 5-6; Exh.

24  7, ¶ 5; Exh. 8, ¶¶ 18-21.  It does not appear, furthermore, that defendant Bowers has ever processed

25  plaintiff's incoming or legal mail or been involved in processing plaintiff's access to his legal property or

26  other legal resources. Defendants' Motion, Exh. 8, ¶ 12-15.  Although defendant Bowers was involved in

27  photocopying certain of plaintiff's legal documents at his request, nothing in the record indicates that he

28  did so in an improper manner. Id.

With respect to plaintiff's claim that defendant Bowers issued him frivolous infractions, defendant Bowers wrote two infractions involving plaintiff during the relevant time period. Id. at ¶¶ 16-17.  These infractions were written based on the facts defendant Bowers had (namely that plaintiff had subscribed to a magazine when he had no funds with which to pay for the subscription), which led defendant Bowers to believe that plaintiff was attempting to steal the magazines. Id. at ¶ 17.  Nothing in the record indicates that either infraction was written for an improper purpose. Id.  As such, plaintiff has failed to sufficiently set forth a claim of retaliation against defendant Bowers.

Plaintiff next alleges that defendants Bowers and Sullivan conspired to issue plaintiff with the infractions concerning the magazine subscription, and that defendants Bowers, Sullivan and Bruner conspired to cause conflict between him and the magazine.  As noted above, however, defendant Bowers did not writ the infractions for any improper purpose.  In addition, although defendant Sullivan did review the infractions, she believed the information contained therein to be true, and, based on that information, she deemed the infractions to have been properly written. Id. at Exh. 5, ¶ 23.  Defendant Bruner was not involved with issuing the infractions, and merely forwarded the payment overdue notice the magazine had sent to plaintiff to defendant Bowers for investigation of the matter and possible infraction, as it indicated plaintiff was in violation of prison policy. Id. at Exh. 9, ¶¶ 7-9.

Plaintiff further alleges defendants Bowers and Sullivan conspired to read his confidential mail for illegitimate reasons.  As noted above, however, defendant Bowers does not process incoming or outgoing mail, and did not interfere with plaintiff's ability to receive, or obtain access to, his mail. Id. at Exh. 8, ¶ 12.  Nor did he pay attention to certain legal documents plaintiff gave to him for photocopying, other than to verify that they generally appeared to be legal in nature. Id. at ¶ 18.  With respect to defendant Sullivan, she is the Mailroom (Correctional) Sergeant at the Stafford Creek Corrections Center. Id. at Exh. 9, ¶ 3.  Nothing in the record indicates that defendant Sullivan saw any of plaintiff's mail other than the magazine payment overdue notice, or that she otherwise improperly handled inmate mail. Id. at Exh. 9.

Finally, plaintiff alleges that defendants Bowers, Bruner, McCarty, and Sullivan, along with two other non-parties, caused him extreme mental suffering by not doing anything to help him deal with the death of his aunt. Complaint, pp. 4-5.  Plaintiff, however, was offered a variety of tools to use to assist him, including extra yard time to provide him with increased access to a telephone, access to a chaplain,

1   and access to a mental health counselor, all of which he rejected. Defendants' Motion, Exh. 5, ¶ 21; Exh. 8,

2   ¶¶ 9-10.  Other than requesting additional privileges such as a television, which he was not authorized to

3   have, plaintiff has failed to indicate what else defendants were required to do in order to assist him in the

4   grieving process. Id. at Exh. 5, ¶ 21.

5          Under 42 U.S.C. § 1997(e), furthermore, no federal civil action may be brought by a prisoner for

6   mental or emotional injury suffered while in custody without a prior showing of physical injury.  A _de_

7   _minimis_ physical injury is not sufficient to support a claim for mental or emotional suffering.  Siglar v.

8   Hightower, 112 F.3d 191, 193 (5th Cir. 1997).  Here, plaintiff has not shown he was physically injured in

9   any way as the result of defendants' alleged actions.

10  III.    Plaintiff's Third Claim

11         In his third claim, plaintiff alleges defendants Vail and Distefano tampered with a petition he sent

12  to the governor of Washington, which resulted in him being subject to imminent threat and retaliation.

13  Complaint, pp. 5-6.  The record shows, however, that plaintiff's petition was routed to defendants Vail

14  and Distefano by the governor's office. Defendants' Motion, Exh. 10 (Declaration of Eldon Vail) and

15  Exh. 11 (Declaration of Monica Distefano).  Further, it is clear from their declarations, that in responding

16  to and processing plaintiff's petition on behalf of the governor, they followed the proper procedures. Id.

17  As such, plaintiff has failed to state a valid claim here as well.

18                                    CONCLUSION

19         Defendants have met their burden of demonstrating that there are no genuine issues of material

20  fact and that they are entitled to judgment as a matter of law.  Plaintiff has failed in all instances to allege

21  facts sufficient to form a constitutional violation.  Accordingly, the undersigned recommends that the

22  court GRANT defendants' motion for summary judgment.  The undersigned further recommends that all

23  other pending motions currently before the court be dismissed.

24         Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures, the

25  parties shall have ten (10) days from service of this Report and Recommendation to file written objections

26  thereto. See also Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for

27  purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by

28  Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 17, 2005**, as noted in

REPORT AND RECOMMENDATION
Page - 9

1    the caption.

2        DATED this 1st day of June, 2005.

3

4

5                                        Karen L. Strombom
                                         Karen L. Strombom
6                                        United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 10